IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHERWIN T. WRIGHT | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | CAUSE NO. _____ |
| | ) | |
| CHEVRON PHILLIPS CHEMICAL COMPANY, LP | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY TRIAL DEMAND

COMES NOW, the plaintiff, Sherwin T. Wright ("Plaintiff") and files this Original Complaint for his private action, seeking redress for employment discrimination and wrongful discharge. Based on Plaintiff's personal knowledge of events and upon information and belief, he respectfully submits the following in support of his action for damages:

### VENUE AND JURISDICTION

1. The Court has original jurisdiction over the claims in this cause of action because they arise under Federal law, specifically Title VII of the Civil Rights Act, 42 U.S.C. Section 2000e *et. seq.* and 42 U.S.C. Section 1981 as amended by the Civil Rights Act of 1991 ("Title VII"), to correct unlawful employment practices on the basis of race and ethnicity, and retaliation based on Plaintiff's participation in protected activity. Venue is proper in this Court pursuant to 28 U.S.C.A. §1391.

2. This Court has supplemental jurisdiction over the State law claim in this complaint pursuant to 28 U.S.C.A. §1367 because the claim is so related to the claims within this

Court's original jurisdiction that it forms part of the same case or controversy under Article 3 of the U.S. Constitution.

## PARTIES

3. Plaintiff is a resident of the State of Texas, Harris County.

4. Defendant, Chevron Phillips Chemical Company, LP ("Defendant") is a Delaware entity that maintains its principal office in this Court's district at 10001 Six Pines Drives, The Woodlands, Texas 77380. Defendant may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

## FACTS

5. Since 2008, Plaintiff was employed by Defendant as an Electrician in the Maintenance Department. Plaintiff worked at Defendant's plant in Pasadena, Texas ("the plant"). Of the 16 electricians on the plant's electrical team, Plaintiff was the sole African-American.

6. In 2011, Plaintiff had a motorcycle injury that caused severe brain trauma. Defendant, Defendant's medical doctor, Dr. Stanton, and Plaintiff's doctors from TIRR Memorial Hermann ("TIRR") worked together to develop a system of accommodations and protocols to govern Plaintiff's work, to ensure he could rejoin the company post-accident. One very important protocol was that Plaintiff only work as part of a team of at least two people.

7. In October 2014, the plant was in turnaround mode. Plants such as Defendant's go into turnaround mode in order to perform scheduled maintenance and repair of the plant's equipment. During this time electricians and other craftsmen are present in the unit to facilitate the round of repairs. During Defendant's turnaround in October 2014, the plant's energized equipment was shut down, had to be emptied of any chemicals and had to undergo what is known as the Lock Out Tag Out procedure ("LOTO") to ensure for safety reasons that de-energized equipment is not started up when maintenance personnel are working on equipment during the turnaround.

8. Despite the protocols in place, Plaintiff's operator, Billy Donnell, ordered him to work alone, performing the LOTO function. Plaintiff's supervisor also instructed him to use a new method of performing the LOTO for this particular turnaround that differed from the previously used LOTO process at the plant.

9. It is important to note that the LOTO process itself ordinarily incorporates a series of built-in checks and balances to ensure that it is done properly, including the necessity for another person, either an operator or other craftsperson following behind the person who performs the initial steps of the LOTO, to verify de-energization and inoperability of the equipment LOTO-ed. So, in the instance in this case, Plaintiff should not have been the only "set of eyes" to go over the LOTO and verify it, as a matter of ordinary course.

10. After performing his work, on September 30, 2014, Plaintiff was accused on October 8, 2014 of improperly performing one part of the LOTO on a piece of equipment. Despite the fact that others were or should have been also involved in the LOTO process, Plaintiff was singled out and suspended without pay for this alleged failure. Defendant's Human Resources ("HR") personnel did not tell him how long the suspension would be in place.

11. After three weeks of being kept in the dark on when he could return to work, and with bills piling up at home because of his lack of pay, Plaintiff grew concerned. He had previously met Defendant's CEO in connection with his return from work after the motorcycle accident. The CEO had given Plaintiff his business card and invited him to contact the CEO if he had any problems on the job. Recalling this exchange, Plaintiff decided to accept that invitation, and Plaintiff emailed the CEO to inform him of the events leading to his suspension, the suspension and its seemingly endless duration.

12. In response, the CEO replied that he had "looked into your situation and can inform you that someone will be contacting you shortly regarding your status." The next day, an HR representative phoned Plaintiff, lifted the suspension and allowed him to return to work.

13. However, after he returned to work, the HR representatives and persons involved in levying his suspension were not pleased with Plaintiff having made a complaint to the CEO

and their retaliatory behavior after Plaintiff returned reflected this displeasure. The first retaliatory action taken was included in the "Final Warning and Two Week Suspension Letter" given to him at the time of his return to work. In it, Plaintiff was ordered to get "re-training" as an electrician before he could return to working in the plant. To highlight how retaliatory this order was, there was not even a pre-existing process for the type of "re-training" he was ordered to undergo. His "re-training," as a result, consisted of him being banished to a cubicle reading old electrical texts that were cobbled together by a supervisor for him to read and review.

14. The next retaliatory action taken against him was an unfounded allegation and a written write-up and 7-day suspension in November 2014 for allegedly falling asleep in the cubicle one day. <u>This suspension occurred within mere weeks of him being called back to work after he reported the LOTO incident and wrongful suspension to the CEO.</u>  One person who accused him of sleeping was a contract employee who, later, was unable to identify Plaintiff as the person he allegedly saw sleeping. The other accuser was one of Plaintiff's supervisors, whom also had taken part in suspending Plaintiff after the LOTO incident. The supervisor did not see Plaintiff sleeping himself, but claims to have relied upon the statement of the contract employee who never saw Plaintiff sleeping either.

15. The final retaliatory action taken against Plaintiff was his wrongful termination. Defendant claims to have fired Plaintiff because he failed to call in and report his absence from work on the basis of a severe sickness.  However, it is clear from records that Plaintiff did call in to work to report that he would be out sick, using the company's call-in procedure that Defendant labeled its "one call does it all" system for reporting medical absences. All of these retaliatory actions, from the "re-training order" to the termination occurred within just weeks of Plaintiff reporting the LOTO events and discriminatory suspension to the CEO.

## CAUSE OF ACTION- RACE/ETHNICITY/COLOR DISCRIMINATION

16. Plaintiff incorporates by reference paragraphs 1-15 as if set forth fully here.

17. Plaintiff is an African American male. His race/ethnicity/color places him in a protected class under Title VII. During the course of his employment, up to and including his termination, Plaintiff was subjected to discrimination at his workplace because Defendant unequally enforced its disciplinary policies and procedures on the basis of race/ethnicity/color. Defendant's singling out and suspension of Plaintiff after the LOTO incident, ordering Plaintiff to undergo "re-training," and accusing him of sleeping on the job and re-suspending him after he returned to work are examples of the discrimination Plaintiff was subjected to during his employment.

18. Defendant's behavior was motivated by discriminatory motives. Because of Defendant's discriminatory behavior, Plaintiff has suffered damages that were the direct and proximate result of Defendant's violations of Title VII, and for which Defendant is liable.

## CAUSE OF ACTION- RETALIATION IN VIOLATION OF TITLE VII

19. Plaintiff incorporates by reference paragraphs 1-18 as if set forth fully here.

20. Defendant's actions after Plaintiff returned to work- *inter alia*, the order to "re-training," the allegation and suspension of Plaintiff for allegedly sleeping on the job, and terminating Plaintiff for allegedly failing to call in sick, when he did call in sick- amount to retaliation and retaliatory discharge in violation of Title VII.

21. Defendant's acts in violation of the Title VII anti-retaliation provisions have caused Plaintiff to suffer damages that were the direct and proximate result of Defendant's violations of the Title VII anti-retaliation provisions, and for which Defendant is liable.

### CAUSE OF ACTION- DISCRIMINATORY DISCHARGE: TEXAS LABOR CODE

22.     Plaintiff incorporates by reference paragraphs 1-21 as if set forth fully here.

23.     Defendant's intentional acts and failure to act, unequal enforcement of its disciplinary rules, policies and procedures and its discharge of Plaintiff also violated the Texas Commission on Human Rights Act, Texas Labor Code §21.051(1), which provides, in pertinent part that "An employer…commits an unlawful employment practice if because of race, color…employer: …discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment."

24.     Because of Defendant's discriminatory behavior, Plaintiff has suffered damages that were the direct and proximate result of Defendant's violations of Texas Labor Code, and for which Defendant is liable.

### DAMAGES

25.     Defendant's actions and failures to act have caused Plaintiff to suffer harm, including without limitation lost earnings, lost benefits and other severe financial losses, as well as humiliation, embarrassment, emotional and physical distress and mental anguish.

26.     Defendant's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard to Plaintiff's rights, entitling him to punitive damages.

27.     Plaintiff has found it necessary to retain legal counsel to obtain remedies for the discrimination, retaliation and retaliatory discharge outlined above in this Complaint. As such, reasonable attorney fees and costs of the litigation should be awarded to Plaintiff, as permitted by Title VII and the Texas Labor Code.

## CONDITIONS PRECEDENT

28. All conditions precedent to Plaintiff's claim for relief were performed or have occurred, including without limitation, exhaustion of his administrative remedies by timely submission of his charge to the EEOC and compliance with the Complaint filing deadline established in the EEOC's Right to Sue letter.

## JURY DEMAND

29. Plaintiff demands a trial by jury of the causes of action asserted in this Complaint and tenders the appropriate fee.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Sherwin T. Wright, respectfully asks that this Court enter a judgment in his favor granting the following relief to Plaintiff:

    a. Back pay and front pay;

    b. Lost benefits;

    c. Other actual damages for lost compensation and job benefits to which he is entitled under law and equity;

    d. An award of litigation costs and expenses, including reasonable attorneys' fees;

    e. Pre-judgment and post-judgment interest;

    f. Punitive damages; and

    g. All other relief to which Plaintiff is entitled under law and equity.

Dated August ____, 2015

Respectfully submitted this day,

By: */s/ Marrick Armstrong*
_____

Marrick Armstrong, Attorney-in-Charge
Armstrong Legal PLLC
State Bar No. 24057695
Robert L. Woods
Woods Law Firm, P.C.
State Bar No. 24044005

2016 Main Street, Ste. 111
Houston, Texas 77002
Telephone:  (832) 622-6562
Fax:          (281) 809-8735
Email: Marrick@ArmstrongLegalPLLC.com