# EXHIBIT C

```
 1                    REPORTER'S RECORD
                   VOLUME 1 OF 1 VOLUMES
 2         IN THE MATTER OF THE ARBITRATION OF:
   SHERWIN TYRELL WRIGHT        )
 3                              )
          GRIEVANT,             )
 4                              )
   VS.                          )
 5                              )
   CHEVRON PHILLIPS CHEMICAL    )
 6 COMPANY                      )
                                )
 7    EMPLOYER                  )
                                )
 8                              )
                                )
 9                              )
   ***********************************************************
10
                              *****
11                   ***ARBITRATION HEARING***
                              *****
12
   ***********************************************************
13       BE IT REMEMBERED that on June 10, 2015, the
14 following proceedings came on to be heard in the
15 above-entitled and numbered cause before the Honorable
16 T. Zane Reeves, Ph.D, Arbitrator presiding, held in
17 Houston, Harris County, Texas;
18              Proceedings reported by computerized
19 stenotype machine; Reporter's Record produced by
20 computer-assisted transcription.
21
22
23
24
25
```

```
 1                  A P P E A R A N C E S
 2
 3  FOR THE UNION:
 4   Patrick M. Flynn
     Hale Cullom
 5   BLAKENEY FLYNN & MUMEY
     1225 N. Loop West, Suite 1000
 6   Houston, Texas 77091
     Tel: 713.861.6163
 7   Fax:  713.222.9114
     E-mail:  pat@pmfpc.com
 8
 9  FOR THE EMPLOYER:
10   Marlene C. Williams
     JACKSON WALKER LLP
11   1401 McKinney, Suite 1900
     Houston, Texas 77010
12   Tel:  713.752.4447
     Fax:  713.308.4171
13   E-mail:  Mcwilliams@jw.com
14
    ALSO PRESENT:
15        Karen R. Monroe
          Senior Counsel/Chevron Phillips
16
          Lisa Laurin
17        HR Manager/Chevron Phillips
18        April Danford
          HR Business Partner/Chevron Phillips
19
          Michael Reedy
20        Chief Steward IBEW Local 716
21        D. Dale Wortham/IBEW Local 716
          Bob Priest/IBEW Local 716
22        Carlos Villarreal/IBEW Local 716
23
24
25
```

```
 1                    I N D E X
 2                                                         PAGE
 3  June 10, 2015
 4  Appearances...................................    2
 5
    Proceedings...................................    7
 6
 7  KEITH BRABENEC
         Direct Examination by Ms. Williams........   16
 8       Cross-Examination by Mr. Flynn............   41
         Redirect Examination by Ms. Williams......   54
 9
    DEAN MERRITT
10       Direct Examination by Ms. Williams........   56
         Cross-Examination by Mr. Flynn............   63
11
    JOHN SMITH
12       Direct Examination by Ms. Williams........   67
         Cross-Examination by Mr. Flynn............   81
13       Redirect Examination by Ms. Williams......   87
         Recross-Examination by Mr. Flynn..........   89
14       Redirect Examination by Ms. Williams......   90
         Recross-Examination by Mr. Flynn..........   91
15
    VIRGINIA HUBBARD
16       Direct Examination by Ms. Williams........   93
         Cross-Examination by Mr. Flynn............  129
17       Redirect Examination by Ms. Williams......  148
         Recross-Examination by Mr. Flynn..........  152
18
    ANDY WOODS
19       Direct Examination by Ms. Williams........  153
         Cross-Examination by Mr. Flynn............  163
20
    ADAM SAINATO
21       Direct Examination by Ms. Williams........  167
         Cross-Examination by Mr. Flynn............  190
22       Redirect Examination by Ms. Williams......  198
23  LISA LAURIN
         Direct Examination by Ms. Williams........  200
24       Cross-Examination by Mr. Flynn............  213
         Cross-Examination by Mr. Flynn............  221
25       Redirect Examination by Ms. Williams......  223
```

1  MICHAEL REEDY
         Direct Examination by Ms. Williams........ 226
2        Cross-Examination by Mr. Flynn............ 234
3  JON DAVID HIGGINS
         Direct Examination by Mr. Flynn........... 245
4        Cross-Examination by Ms. Williams......... 250
         Redirect Examination by Mr. Flynn......... 255
5        Recross-Examination by Ms. Williams....... 256
6  SHERWIN TYRELL WRIGHT
         Direct Examination by Mr. Flynn........... 257
7        Cross-Examination by Ms. Williams......... 283
8
   Reporter's Certificate........................ 315
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| | Exhibit | Description | Page |
|---|---|---|---|
| | | E X H I B I T S | |
| | Exhibit J1 | COLLECTIVE BARGAINING AGREEMENT OF 2012-2015 | 7 |
| | Exhibit J2, | INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS GRIEVANCE FORM AND RECORD OF PROCEEDINGS | 8 |
| | Exhibit J3 | CHEVRON PHILLIPS LETTER OF DENIAL DATED DECEMBER 23, 2014 RE: S. TYRELL WRIGHT TERMINATION HEARING | 8 |
| | Exhibit J4 | INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS MOVE TO ARBITRATION LETTER DATED DECEMBER 23, 2014 | 8 |
| | Exhibit M1 | ISOLATION LIST #42 PREPARED BY S. PATTON 9/19/14 LOCK BOX #42 | 30 |
| | Exhibit M2 | FINAL WRITTEN WARNING AND TWO-WEEK SUSPENSION LETTER DATED OCTOBER 30, 2014 FROM ANDY WOODS TO TYRELL WRIGHT | 112 |
| | Exhibit M3 | WORKING RULES & DISCIPLINE POLICY PASADENA PLASTICS COMPLEX | 124 |
| | Exhibit U1 | COLOR POSTER/ONE CALL DOES IT ALL! | 131 |
| | Exhibit M4 | LAST CHANCE LETTER DATED NOVEMBER 18, 2014 FROM ANDY WOODS TO TYRELL WRIGHT | 161 |
| | Exhibit M5 | PASADENA PLASTICS COMPLEX EMPLOYEE PROCESS FOR REPORTING OFF OF AND RETURNING TO WORK | 181 |
| | Exhibit M6 | TOTAL ABSENCE MANAGEMENT UPMC WORK PARTNERS | 186 |
| | Exhibit U2 | E-MAIL FROM TYRELL WRIGHT TO PETE L. CELLA DATED OCTOBER 27, 2014 RE: PASADENA FACILITY INCIDENT | 262 |

6/10/2015

6

```
 1                  E X H I B I T S (Continued)
 2   Exhibit      CLINIC VISIT PROGRESS NOTES                 272
     U3           REPORT DATED 02/05/2015 RE:
 3                SHERWIN WRIGHT
 4   Exhibit      SPRINT CALL DETAILS RE: (832)               279
     U4           969-6193 SHERWIN WRIGHT
 5
     Exhibit      EAST HOUSTON MEDICAL GROUP RETURN           282
 6   U5           TO WORK LETTER DATED 11/20/2014
                  FROM DR. LORIE CRAM
 7
     Exhibit      EMPLOYEE ACKNOWLEDGEMENT OF                 307
 8   M7           RECEIPT OF PLANT WORKING RULES
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                MS. WILLIAMS:  No further questions.
 2                THE ARBITRATOR:  Thank you for your time
 3  here today, Mr. Smith.
 4                MS. WILLIAMS:  Thank you.
 5                THE WITNESS:  Bye-bye.
 6                THE ARBITRATOR:  We'll take a five-minute
 7  break.
 8                (A break was taken from 11:12 a.m. to
 9                11:21 a.m.)
10                (Oath administered; witness sworn.)
11                THE ARBITRATOR:  Will you give us your
12  full name for the record?
13                THE WITNESS:  Virginia Hubbard.
14                THE ARBITRATOR:  Spell your last name,
15  please.
16                THE WITNESS:  H-U-B-B-A-R-D.
17                THE ARBITRATOR:  And what is your job
18  title or place of employment?
19                THE WITNESS:  I'm currently retired.
20                THE ARBITRATOR:  Okay.  And where was
21  your former place of employment?
22                THE WITNESS:  Chevron Phillips Chemical
23  Company.
24                THE ARBITRATOR:  Ms. Williams?
25
```

US LEGAL SUPPORT
713.653.7100

```
 1                    VIRGINIA HUBBARD,
 2  having been first duly sworn, testified as follows:
 3                    DIRECT EXAMINATION
 4  BY MS. WILLIAMS:
 5       Q.   Hello Ms. Hubbard.  My name is Marlene
 6  Williams, and I represent the Company in this matter.
 7  As you can see, we have a court reporter here who's
 8  going to take down my questions and your answers.
 9                 So if you'll allow me to finish my
10  questions before you start to answer, that will make her
11  job easier, okay?
12       A.   Okay.
13       Q.   And if you'll speak up and provide oral
14  responses as opposed to shaking your head or nodding
15  your head or saying "uh-huh" or "huh-uh" so that the
16  transcript can accurately reflect your testimony, okay?
17       A.   Yes.
18       Q.   Okay.  You've indicated that you're retired,
19  correct?
20       A.   Yes.
21       Q.   Recently?
22       A.   Yes.
23       Q.   As of when?
24       A.   June 4th, 2015.
25       Q.   Congratulations.
```

1 happened next with respect to your investigation?
2     A.    There was a second meeting.
3     Q.    With Mr. Wright?
4     A.    With Mr. Wright.
5     Q.    Okay.  Who attended that second meeting?
6     A.    The second meeting was Keith Brabenec again, David Higgins, myself, and Darren Barnes; who was the electrical supervisor.
9     Q.    So it was Mr. Wright, Mr. Brabenec, Mr. Higgins, yourself and Mr. Barnes at this second meeting?
12    A.    Yes.
13    Q.    And when did the second meeting take place in relation to the first meeting?
15    A.    The next day.
16    Q.    What was the purpose of the second meeting?
17    A.    Was to review, again, the details that had been talked about in the first meeting and to ask the questions again that he had basically asked on the first day.  Just to be sure that he had all the details.
21    Q.    And by "he" you're referring to --
22    A.    I'm sorry.  Mr. Brabenec, Keith Brabenec.
23    Q.    Did Mr. Wright -- do you recall any comments that Mr. Wright made during this meeting?
25    A.    Again, he said that he just did not, you know,

pay enough attention. Mr. Brabenec asked him if he was confused, did he ask -- if he had any confusion, did he ask anyone or did he go to his supervisors and ask his supervisors if -- you know, about anything. Mr. Wright responded no.

Q. As a part of your investigation, did you discover any fact that suggested that Mr. Wright was confused about the instructions on the isolation list?

A. No.

Q. Did Mr. -- apart -- I asked you whether he had any comments. Do you recall him asking -- Mr. Wright asking any questions during this meeting?

A. The only question that he asked was he said that he couldn't remember the name of the operator that had -- that had been working with him.

And also that during that -- the second day of the investigation, Mr. Brabenec had found out the name of the person, the operator that had went over with Mr. Wright to do the work. And one of the questions that Mr. Brabenec asked Mr. Wright was that Mr. -- that the operator stated that -- that he was there when Mr. Wright signed off on the isolation list.

And he said that he had to go back and get some -- some more tools to come back to finish the job. And Mr. Wright denied that he said that.

1    Q.   So Mr. Brabenec had learned as a part of the
2 investigation that the operator said that Mr. Wright
3 needed to go get some tools?
4    A.   Told him that he was going to get some tools
5 and that he would return.  But he never saw him return.
6    Q.   Do you recall any other questions or comments
7 from Mr. Wright during the second meeting?
8    A.   No.  Nothing other than what he said earlier.
9    Q.   What happened with respect to your
10 investigation after the second meeting?
11    A.   After the second meeting, I was called by the
12 operations superintendent and his name is Brian Kubsch.
13              MR. FLYNN:  I couldn't hear?
14              THE WITNESS:  His name a Brian Kubsch,
15 K-U-B-S-C-H.  He's the Plant 8 Operations
16 Superintendent.
17 BY MS. WILLIAMS:
18    Q.   You said that you were called by him?
19    A.   I was called by him --
20    Q.   Okay.
21    A.   -- to come to his office to meet with the
22 operator that had been working with Mr. Wright.  And the
23 operator was Billy Donnell.
24              THE ARBITRATOR:  Can you spell the last
25 name, please?

```
 1              THE WITNESS:  D-O-N-N-E-L-L, Donnell.
 2   BY MS. WILLIAMS:
 3        Q.   So as a part of your investigation, you also
 4   met with the operator --
 5        A.   Yes.
 6        Q.   -- Billy Donnell?
 7        A.   Yes.
 8        Q.   And what was your discussion with Mr. Donnell?
 9   Can you describe that for us?
10        A.   Brian Kubsch led the conversation in asking
11   him to go over the sequence of what happened when he and
12   Tyrell went over to the -- it's called the MCC.  I think
13   that was where the work was supposed to be done.
14             And so -- and asked them the questions.
15   And that's where Billy Donnell told him what happened.
16   And he said that he told -- Mr. Wright said he had to go
17   back and get some tools; and that, you know, he did the
18   de-energizing, that he had to go and get some tools and
19   that -- some other tools and that he would be back.
20        Q.   So according to Mr. Donnell, Mr. Wright had
21   indicated that he had done the de-energizing part,
22   correct?
23        A.   Correct.
24        Q.   That he had to go and get some tools to -- and
25   then would return to complete the task, correct?
```

```
 1        A.   Yes.
 2        Q.   What else did Mr. Donnell say about this?
 3        A.   Basically, that was it.  And he just said that
 4   he never saw him come back.  And so that was his only
 5   involvement with it.
 6        Q.   After your meeting with Mr. Donnell, what
 7   happened next with respect to your investigation of this
 8   issue?
 9        A.   I met with my supervisor, Lisa Laurin, HR
10   Manager.
11        Q.   Do you normally -- did you feel like at that
12   point when you met with Ms. Laurin that you had
13   completed your fact finding?
14        A.   Yes.
15        Q.   Is that -- is it normal for you at this point
16   to meet with Ms. Laurin to discuss the investigation?
17        A.   Yes.
18        Q.   And what did you discuss with Ms. Laurin?
19        A.   I discussed with her the information that we
20   had received in the meetings and -- on both days of the
21   meetings; of what had happened and that who was
22   involved, the employees, you know, that was involved.
23                  And also kind of gave a brief description
24   of what had -- what had been told to us and what had
25   happened and who the witnesses were.
```

1                REPORTER'S CERTIFICATE
2  THE STATE OF TEXAS   )
   COUNTY OF HARRIS     )
3
4       I, TOYLORIA LANAY HUNTER, Certified Court Reporter
5  in and for the Harris County, State of Texas, do hereby
6  certify that the above and foregoing contains a true and
7  correct transcription of all portions of evidence and
8  other proceedings requested in writing by counsel for
9  the parties to be included in this volume of the
10 Reporter's Record, in the above-styled and numbered
11 cause, all of which occurred in an Arbitration Hearing
12 and were reported by me.
13      I further certify that this Reporter's Record of the
14 proceedings truly and correctly reflects the exhibits,
15 if any, admitted by the respective parties.
16
17      WITNESS MY OFFICIAL HAND this the 25th day of June,
18 2015.
19
20      _____
        TOYLORIA LANAY HUNTER
21      Texas CSR No. 7978
        Expiration Date:  12/31/2015
22      US LEGAL SUPPORT
        FIRM REGISTRATION NO.
23      363 N. Sam Houston Parkway East
        Suite 1200
24      Houston, Texas 77060
        Tel: 713.653.7100
25      Fax: 713.653.7144