UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHERWIN T. WRIGHT, | § | |
|     *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-15-2363 |
| | § | |
| CHEVRON PHILLIPS CHEMICAL CO., LP, | § | |
|     *Defendant*. | § | |

### SUMMARY JUDGMENT OPINION AND ORDER

This employment discrimination case is before the court on defendant's motion for summary judgment (Dkt. 21). A hearing was held on August 24, 2017. The motion is granted.

**Background**

From at least April 2008 until December 2014,[1] Wright was the only African-American maintenance electrician at defendant's Pasadena, Texas plastics complex. From 2011 to 2012, Wright was on a medical leave of absence due to injuries, including a traumatic brain injury, he suffered in a motorcycle accident. He returned to work with the restriction that he must work with a second electrician at all times.

In September 2014, the Pasadena facility was engaged in a "turnaround" project. A unit was shut down so that maintenance, including electrical work, could be done. The project required completion of a "Lock, Tag, Try" process in which equipment is turned off

---

[1] Wright's summary judgment response says he was hired by Chevron in 1994 (Dkt. 21 at 8), but in his deposition he testified he started in April 2008 (Dkt. 19-2 at 6). The discrepancy is not material.

or "de-energized" so that it cannot be turned on while work is in progress. The Lock, Tag, Try process has several steps, and requires completion of various forms by the electrician completing each step. One of these forms is called the "Isolation list" and identifies electrical breakers that need to be properly de-energized. On September 30, 2014, Wright's supervisor, Darryn Barnes, assigned Wright to disconnect the T-leads from certain breakers. Wright was not accompanied by a second electrician when he performed the assignment. A superintendent, Keith Bravenec, later learned that the T-leads on those electrical breakers had not been disconnected as required by the Lock, Tag, Try process and as indicated by Wright's initials on the isolation list. Bravenec reported the incident to Human Resources.

On October 8, 2014, defendant told Wright he was being suspended without pay pending an investigation into the incident. This initial suspension was open-ended — Wright was not given a date to return to work. Having heard nothing further from his employer by October 27, 2014, Wright sent an email to Chevron CEO Pete Cella.[2] Cella responded quickly, saying he had "looked into your situation and can inform you that someone will be contacting you shortly about your status."[3] Within 24 hours, Chevron contacted Wright and told him to return to the plant.

---

[2] Wright's email says that he had met Cella while recovering from his motorcycle accident, at which time Cella gave Wright his card and said to call if he had any problems. Dkt. 21-7.

[3] Dkt. 21-8.

Upon his return on October 30, 2014, Wright was given a letter titled "Final Warning and Two-week Suspension."[4] Wright signed the letter although he disagreed with its content. Wright was assigned to report to Tom Shomette at the Pasadena Central Business Office to undergo "retraining and recertification."

There was no written procedure in place for the "retraining and recertification" Wright allegedly needed. During this period, Wright was given old electrical manuals and told to sit in a cubicle and read them. Chevron did not have a test in place to determine when or whether Wright would be certified to return to work. No other employee had ever been given this form of discipline.

On November 11, 2014, a contract employee reported to his supervisor, Dean Merritt, that someone was snoring in a cubicle. Although Wright disputes it, Human Resources concluded the snorer was Wright. On November 18, 2014, Chevron issued a three-day suspension and "last chance" warning to Wright for this alleged violation of company work rules. The last chance warning informed Wright that he would be immediately terminated for any attendance or tardiness issues; unsatisfactory job performance; failure to follow all procedures, policies, and work rules; and that he "must pass a recertification exam and walk-thru after reasonable efforts to remediate, as determined by the Company."[5]

---

[4] Dkt. 21-6.

[5] Dkt. 20 at 2.

3

On November 20, 2014, Wright did not show up for his "retraining." The training superintendent, John Smith, called Wright. Wright confirmed that he did not contact a supervisor regarding his absence, but that he had called the University of Pittsburgh Medical Center, Work Partners' Division (UPMC), a third-party that managed defendant's medical leave programs. Chevron management, specifically Human Resource Manager Lisa Laurin, Department Manager Andy Woods, and Plant Manager Mike Gilbert, decided to terminate Wright. Chevron contends that it has not hired anyone to replace Wright.

Wright has sued Chevron for racial discrimination and retaliation under Title VII, 42 U.S.C. § 1981, and the Texas Labor Code.[6] Chevron moves for summary judgment on Wright's claims.

**Summary Judgment Standards**

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable

---

[6] Dkt. 1. The summary judgment analysis is the same for claims of race discrimination under Title VII, § 1981, and § 1983. *Lauderdale v. Texas Dept. of Criminal Justice, Institutional Division*, 512 F.3d 157, 166 (5th Cir. 2007). In addition, Texas courts look to federal law when evaluating disability discrimination claims under chapter 21 of the Texas Labor Code. *Haggar Apparel Co. v. Leal*, 154 S.W.3d 98, 100 (Tex. 2004); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). Therefore, while there may be additional bases for dismissal of Wright's § 1981 and Texas Labor Code claims, the court addresses all Wright's claims under Title VII standards.

4

jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

The standard for granting summary judgment in Title VII cases is by now too familiar to warrant extended recitation. *Reeves v. Sanderson Plumbing Prods., Inc.*, succinctly summarizes the appropriate inquiry:

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

530 U.S. 133, 148-49 (2000). The court must draw all reasonable inferences in favor of the non-movant, and disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.* at 150-51. Trial courts should not treat discrimination differently than other ultimate questions of fact for purposes of Rule 50 or 56. *Id.* at 148.

**Analysis**

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It also prohibits an employer from retaliating against an employee for opposing unlawful employment practices or participating in Title VII proceedings. 42 U.S.C. § 2000e-3(a).

*Racial discrimination.* Wright has no evidence that similarly situated employees who are not African-American were treated more favorably, or that he was replaced by a non-African-American. Nonetheless, Wright points to the following facts in support of his contention that defendant discriminated against him:

• Wright was the only African-American among 11 electricians at the Pasadena facility[7];

• No other employee involved in the incomplete Lock, Tag, Try incident was disciplined, including his supervisor Darryn Barnes who sent him to do the job without a work order and without a second electrician, or Billy Donnell, the operator who told Wright that he did not need to complete the Lock, Tag, Try process and refused to return the Isolation List to him so he could remove his initials[8];

• Defendant has never required another employee to "recertify" in his field before being allowed to return to work[9];

• At the time Wright was suspended for the Lock, Tag, Try incident, defendant had no curriculum for his retraining and no test for recertification[10];

---

[7] Higgins Dep., Dkt. 21-1 at 4.

[8] Wright Dep., Dkt. 21-3 at 4-5, 8; Laurin Dep., Dkt. 21-4 at 2-4, 18.

[9] Dkt. 21-4 at 12.

[10] *Id.* at 5-8.

- Although defendant's October 30, 2014 letter stated Wright was being placed on a two-week suspension without pay, defendant actually had no idea how long the "recertification" process would take[11];

- Less than 2 weeks into the "recertification" process, Wright was accused of sleeping on the job, and a week after that was given an additional three-day suspension and a told he would be fired for further violation of work place rules[12];

- Wright contends it was another African-American male who was snoring[13];

- Defendant has never disciplined another employee for simply dozing off in his chair instead of intentionally going to sleep[14];

- Defendant says it terminated Wright because Wright violated rules by not calling his supervisor Darryn Barnes to report that he would absent[15];

- Darryn Barnes was not supervising Wright during his "recertification"[16];

- Wright actually called in sick to defendant's "UPMC" system.[17]

---

[11] *Id.*

[12] Dkt. 21-3 at 13; November 18, 2014 Last Chance Letter, Dkt. 20.

[13] Dkt. 21-3 at 13.

[14] Dkt. 21-1 at 15-22.

[15] Dkt. 21-4 at 15-17.

[16] *Id.*; Dkt. 21-3 at 12-13.

[17] Dkt. 21-3 at 17. UPMC is defendant's "one call" system run by the University of Pittsburgh.

Wright certainly has produced evidence suggesting that his treatment was unusual and perhaps even unfair. There is no basis to infer racial animus from these facts. Proof of the falsity of a defendant's stated reason for an adverse employment action can, in some circumstances, suffice to meet a plaintiff's burden to show pretext. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) ("A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence'"). But here, defendant's reasons are not actually false: Wright did initial the isolation sheet without having completed the assignment; defendant believed Wright was the person snoring in his cubicle; and Wright did call the UPMC system instead of his supervisor on the day he was absent. There may be a fact issue whether these reasons actually justified his termination under existing policies and procedures, but there is nothing to suggest that they are pretext for discrimination. The Fifth Circuit has rejected attempts to show pretext based solely on an employer's failure to follow its own policy. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) (Title VII does not protect employees from arbitrary employment practices, only discriminatory ones). The court concludes that defendant is entitled to summary judgment on Wright's discrimination claim.

***Retaliation.*** The elements of a retaliation claim are (1) protected activity; (2) a materially adverse action; and (3) a causal link between the protected activity and the materially adverse action. *Fisher v. Lufkin Indus. Inc.*, 847 F.3d 752, 757 (5th Cir. 2017); *Fabela v. Socorro Indep. School Dist.*, 329 F.3d 409, 414 (5th Cir. 2003). In the context of

retaliation, a materially adverse action is one that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006).

An employee engages in activity protected by Title VII when he (1) opposes any practice made an unlawful employment practice by Title VII; or (2) makes a charge, testifies, assists, or participates in any manner in an investigation, proceeding, or hearing under Title VII. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996). The employee must demonstrate at least a "reasonable belief" that the practices opposed were unlawful. *Id.*

Wright claims he engaged in protected activity when he sent his October 27, 2014 email to CEO Peter Cello. The court disagrees. Wright's email says only that Wright has "a problem." Wright describes the events leading up to his suspension, informs Cella of the stress it's causing his family, and says he expects better from the Chevron Phillips family. The email does not mention race, Title VII, or any allegedly unlawful employment practice. The email does not constitute a protected activity under Title VII. Therefore, Wright cannot meet his burden to survive summary judgment on his Title VII retaliation claim.

## **Conclusion**

For the reasons set forth above, defendant's motion for summary judgment is granted and plaintiff's claims are dismissed with prejudice. The court will issue a separate final judgment.

Signed at Houston, Texas on September 12, 2017.

_____
Stephen Wm Smith
United States Magistrate Judge